May it please the board, Vance Witte for Appellant, Princeton Excess and Surplus Alliance Insurance Company. I'll begin with an issue related to the 2002 policy, since that policy is relevant to the claims brought by all but one of the models who are appellees here. That question is whether the district court erred in failing to imply the unambiguous exhibition exclusion on the basis that it rendered a portion of the granted coverage illusory. Next, I will address an issue that's relevant to both policies, the knowing violation of the rights of another exclusion and whether it should have been applied. And finally, time permitting, I will address a question which is largely unique to the coverage under the 2001 policy, which is whether coverage is triggered by the use of another's advertising idea provision. The first question is whether the district court erred in holding that the exhibition exclusion rendered the coverage illusory in the policy. There's much that the parties and the district court agree upon. Coverage B of the policy provides that coverage for personal and advertising injury. This term is defined as injury arising from one of seven enumerated offenses. The model appellees sued the club appellees for unauthorized use of their images in the club's advertising and promotional materials. Their suit implicated offense E, which pertains to publications that violate a person's right of privacy, and also potentially offense D, pertaining to libel and slander. Consequently, coverage would have existed but for the existence of the exhibition's endorsement, which excludes conduct arising out of exhibitions and related marketing. And this exclusion specifically defines exhibitions and related marketing to include the publication and distribution and exhibition of images. What is your concept of advertising idea? An advertising idea is an idea, cognition, contextualized that relates to the promotion of a product. That is one of the enumerated offenses that is in the policy. And it is a particularly relevant question with regard to coverage under the 01 policy for the claim of model appellee Lucy Pender since she was the only person to allege a publication arising during the 2001 policy. And the 2001 policy has a different set of exclusions from the 2002 policy. It has a fields of entertainment exclusion, but the parties here agree that that exclusion does not exclude coverage for use of another's advertising idea in one's own advertisement. So that's where that issue is squarely raised. It was the contention of Pesley below in here that this case does not involve the unauthorized use of an advertising idea. It involves the unauthorized use of an image and the image itself is not an idea. It could be used in a certain context, but decontextualized without anything that shows how the image is related to a particular product or service that one is seeking to promote, then what we don't have is the use of an advertising idea. We just have the unauthorized use of an image, which might be a violation of the person's right of privacy. I have one follow-up then on that. In the Laney case, chiropractic Laney, we addressed three definitions of the advertising idea and then decided that none of those applied. Should we just adopt, should we adopt a particular test or should we just do the same kind of analysis? Well, I think that the analysis in Laney is adequate to cover the situation. It's really just, since advertising idea is an undefined term in the policy and therefore under Texas law, you would use the common when you're in meetings of such terms. Idea has a fairly well-fixed meaning. It's a dictionary definition that we cite in the brief. It hasn't really been challenged. There doesn't seem to be any dispute about what advertising means. Okay. Well, I don't want to get off too much on the advertising idea. Was the district court incorrect in determining that the contract is illusory? Yes, Your Honor. The district court was certainly incorrect in its determination. And its key error, and this is one of the two things that's really a dispute between the parties, is what is the baseline for evaluating how much of the coverage is taken away by the exclusion? Because, obviously, if you were to look at, say, the entire policy, then the exclusion covers only a tiny portion of all the coverage that is granted within the policy. If you were to look at just coverage B, which is for personal and advertising injury, then certainly much of the coverage that is granted in coverage B escapes the exclusion because there's whole offenses, offenses A, B, and C, which could not be violated through advertising. You know, those are the malicious prosecution and false arrest and those kinds of torts. And there are some of the offenses, D and E, for example, which could be violated through advertising, but it could also be violated in other ways as well. So, at most, the exclusion would reach F and G and only parts of offenses D and E. I mean, basically, we only get to the conclusion the district court reached that the coverage was illusory if we segregate out personal injury and advertising injury, right? In other words, we break that section into two parts. Am I oversimplifying that? No, I think that's precisely it, Your Honor. In fact… So, tell us how the district court erred in not doing that. The district court parsed out, you know, A, B, and C are personal injury and D through G are advertising injury. But the policies don't say that. They have one definition for the phrase personal and advertising injury. For whatever reason, they're grouped together. For whatever reason, it was grouped together. And all A through G are defined as personal and advertising injury. Whether they have anything to do with the ordinary definitions of personal injury or the ordinary definitions of advertising injury, it's a defined term in the policy and the definition that's provided in the policy must be the ones that control. I think it's interesting, for example, if you took a case of business disparagement, for example, which is a specific offense under the policy. I mean, that's neither an ordinary language personal injury because it goes to a business organization, nor is it necessarily done through advertising, so it's not an advertising injury either. Yet, it is personal and advertising injury under the definition of this policy because that's what the policy provides. What would you specifically want us to hold? I understand you want us to send it back. What is it that you want us to hold? Well, we would request that the court hold that the policy is not illusory and thus the therefore, as to the O2 policy, there is no coverage either for defense or for identity and therefore, the summary judgment of the insurer should have been granted rather than that brought by the models of the clubs. So, do we render or do we send it back? I think you render, Your Honor, because there are competing motions for summary judgment. There is one scenario in which a remand might be necessary and that is when you look at the knowing violation of rights exclusion and if you determine that the record does not sufficiently indicate whether or not the clubs in doing this promotion knew that they were at fault and were violating the rights of these models. Under that circumstance, if it was not adequately decided one way or another, then it might have to be remanded for specific fact finding as to that element. The bottom line is if we disagree with the district, I mean my understanding, if we disagree with the district court's conclusion about illusory coverage and we say that it wasn't illusory, Princeton wins. Yes, Your Honor, that's correct. That would just be a rendition point. My one hypothetical circumstance relates only to if you find against us on that point but you find for us on the knowing violation of the rights of another exclusion, a completely separate exclusion. Was that preserved? I mean, was it adequately raised below in the trial court and preserved? Yes, the knowing rights of violation exclusion was pleaded below and was raised as a ground for summary judgment. Now, there has been an issue raised because some of the language that was cited in the brief herein is amended language from the O2 policy only, not the O1 policy, which changed the definition of the exclusion as to what knowing violation of the rights of another are to clarify that it would include situations where the actual violation was incurred by an agent or employee. Now, that particular wording was not cited in the motion for summary judgment that Tesluk filed. But that's kind of important, right, because wasn't this really hinging on a vendor as opposed to the parties opposite themselves? Well, it would be an important clarification since it was a vendor involved in this situation. I mean, it would make it very clear that the O2 policy was completely excluded. Now, we contend that under the unamended language that the O1 policy has and even the coverage form of the O2 policy, that since the clubs were found liable for invasion of privacy, that the same kind of direct violation of the rights of another is shown in any event and therefore the change in the language would not be as positive, no matter which language that you use. We do think it is appropriate, though, that since the summary judgment record uncontested and contains the language to which we allude to, the amended definition, that all parties have placed all of the policies and the evidence in the summary judgment record numerous times, so it's not like it's a surprise or there's any dispute that it exists or even what its effect would be, that it would be appropriate for this court to adhere to that language as well. But we don't think it's outcome determinative under this circumstance. There is a secondary issue related to the illusory coverage, and that is what standard should the court use in determining whether the exclusion is broad enough to make the coverage illusory. We believe that the clubs and models and the district court make a mistake when they talk about the largely illusory standard, which has been used in some cases. Those cases, such as Adafina and the Texas Supreme Court and others, were interpretive cases where there were competing constructions offered of a particular exclusion in the policy, and it was, of course, the court's task under those circumstances to determine whether the insurer had set forth a reasonable construction, which, of course, the court would then have to accept. And in those situations, the courts go through the exercise of evaluating the relative reasonableness of the terms, and where coverage is rendered largely illusory, they have tended to go with the interpretation urged by the insurer. But that's not our case. It's the Celestino case, which was cited by this court in its Canutillo ISD case, which talks about, when we're talking about the enforceability of an exclusionary provision, the question is whether it wholly repudes the coverage that is provided under the relevant coverage part. Can you give a hypo where there would be coverage? There would be coverage in a malicious prosecution case. There would be coverage in a false arrest case. There would be coverage in a slander case, which was not, or a libel case, which was not accomplished through an advertising or an exhibition, such as a private letter or something like that. There would be many forms of coverage that would be defined as personal and advertising injury that would still not be excluded under the exhibition's exclusion. And that's just taking into account, if we were just looking at coverage B, coverage A, which is, you know, by-way injury and personal and property damage, and coverage C, which is medical payments, are completely unaffected by the exhibition's and related marketing. What is an illusory coverage principle or doctrine? Is this basically just a doctrine of interpretation, or is it a substantive rule of insurance law? It is at a very high level a substantive rule of insurance law that the exclusion cannot wholly repudiate the coverage that is given, but it's also an interpretive principle if you're trying to decide. I mean, does a Texas court ever ignore the text in order to vindicate the illusory coverage doctrine? Well, it doesn't require the text. It applies the text, and if it finds that it is so broad that it takes on all of the coverage, then it can apply that. That's what happens in some state. Thank you. Anyone else? You saved time for rebuttal. Mr. King. Thank you. Good morning. May it please the court, my name is Will King, and I represent the Club of Appalachia D-Texas, AHV Houston, WL York, and DWG FM. As you just heard, the key issues upon which this case turns are the issues of coverage under offense and application of the illusory coverage doctrine. My colleague, the Models Council, is going to cover the coverage issues, and I'm going to spend my time talking about the illusory coverage doctrine. But with that being said, I'll be, of course,  concerning the existence of coverage. The district court's application of the illusory coverage doctrine was correct for two primary reasons. First, correct the reason that an advertising injury is the unit of coverage circumscribed by offenses D through G, and that we use that unit of coverage to compare against the resolution. Why don't we break it up versus how the policy grouped and defined the injuries? Sure. One, we can look at the actual text of the policy itself. The premise of Princeton's argument, as I understand it, is that because we have this defined term, personal and advertising injury, and it appears in quotes throughout the policy, that fact alone, that it's a linguistic unit, means that it dictates the scope of coverage that's afforded under coverage B. But we also have to remind ourselves, what is coverage in the first place? If nothing else but a group of risks of loss that are caused by some designated perils. So while a defined term certainly controls the meaning of the policy, a defined term does not necessarily mean that we should ignore what the risks are circumscribed under the policy. What's your best case or cases that treat policy language this way? In other words, in evaluating illusory coverage, they slice and dice what the definitions are in the policy to reach the answer to the question. I don't know if there's a case that tracks the example you gave, Your Honor. But I think our best case is Davis-Ruiz, the McConnell versus Davis-Ruiz case. Because in that case, it dealt with an endorsement to coverage A under the CGL policy. And that endorsement basically said, we are extending bodily injury and property damage coverage and modifying occurrence to include professional services. And professional services happen to be testing and consulting. In this same coverage extending endorsement, there was an exclusion. It was called the testing and consulting exclusion. And it basically wrote out the extended portion of coverage. And this court had absolutely no problem finding that there was an irreconcilable conflict just within the endorsement. And the court, based on my reading, effectively declined to apply the plain, ordinary text of the exclusion. Because to do so would have negated the promise contained in the endorsement altogether. But the endorsement there, I guess, added a category of coverage that wasn't otherwise in the policy, correct? In other words, it was sort of a self-contained unit. The endorsement giveth and the exclusion tooketh away. And so that's not what we have here. I guess what I'm asking is, where's your authority for taking coverage B and dividing it into parts to determine whether coverage B is illusory or not? I think one of the strongest cases is, again, in the opinion of this court, and that would be Kip Flores involved a CGO policy with the same merged definition of personal and advertising injury. That case involved a copyright infringement against a home builder who stole somebody's architect's plans and made a bunch of homes and got tagged with a judgment. And the carrier argued, well, those homes aren't an advertisement. They're products. This court said, no, those products can be advertisements, especially when they're used as the advertisement. But more importantly, for purposes of advertising injury, throughout the court's opinion in Kip Flores, advertising injury is referred to as a stand-alone unit. In fact, this court recognized that there is a test out there in the case law for determining whether advertising injury exists, particularly in the duty-to-defend context. You basically look at the allegations in the underlying complaint, whether they raise the potential for liability, and whether they cover offenses. Two, the insured must have engaged in advertising activity during the policy period. And three, there must be a causal connection between the alleged injury and the advertising activity. Under subheading C in Kip Flores, this court had no trouble analyzing the existence of an advertising injury and referred to it extensively. But the point isn't whether advertising injuries can be a category of injury or harm. The question is under this policy, which defines, I guess, personal and advertising injuries together, why we split those out to determine whether that category of coverage is illusory or not. I mean, you'll concede that some of the categories under B, personal and advertising injury, are covered by the policy even given the exclusions. Yes, Your Honor. It's in CR. So the only way you get to illusory coverage is to split out these subcategories that relate to advertising, I guess, or that you say relate to that, and say, well, this is a subcategory even though the policy doesn't say that. Correct. But where's your authority to do that in terms of the illusory question? Certainly. I think that Lyons v. Montgomery is a Texas Supreme Court case. It states the complete rule, and I'm paraphrasing, but if a contractual exception is reasonably certain and can be understood, it must, of course, be given effect unless it is wholly repugnant to the provision intended to be limited by it. So one guidepost that we can use is simply, what is the exclusion targeting? That's one element that we can look at. Here it's abundantly clear from the exclusion itself that it is targeting advertising injuries along with D&E. In fact, we can just look at the title of the exclusion. The lengthy title of the exclusion is something like libel, slander, disparagement, violation of right of privacy, and advertising injury. And it's entirely appropriate to look at a title to define meaning because it's part of a contract. It may not dictate. It's not just a title. This is a defined term. You yourself said it's in quotes throughout the policy. That is correct. It's not just a policy header. I was referring, Your Honor, to the title of exclusion, but to your point about personal and advertising injury appearing throughout the policy, let's consider the fact that it appears in the grant of insurance under coverage B where it says we will pay for damages caused by personal and advertising injury. Well, if we are to interpret the and that appears in personal and advertising injury as operating solely in the conjunctive, that insurance clause doesn't make much sense since everyone agrees that coverage exists under A through C which do not require an advertising predicate. This definition is clearly talking about the alternatives, something that's further demonstrated in the fact that it speaks of is injury arising out of one or more of these offenses. So it recognizes that these offenses can give rise to the injury. It so happens that only two of those injuries necessarily require an advertising predicate. It's F and G. So is your theory essentially the only way to get rid of the right of privacy coverage is to delete it? You can't just do it by exclusion. I think that is the way to avoid the application of the illusory coverage doctrine because this is unlike other types of insurance versus insured situations where I see that my time is running short, where the insurance is saying, well, I thought my claim was covered, but there's nothing in the policy to support it. Well, here there is. There is a promise of coverage for an advertising injury. I guess where I'm going with this is if it's this notion... Let me ask my question again. Your theory, as I understand it, is the only way to get rid of the right of privacy coverage is to delete that provision. You can't do it through another mechanism like an exclusion. I think you could use an exclusion. The issue here is that this exclusion is unique in its breadth. It is not just coextensive with the definition of advertisement. It far exceeds the definition because it not only speaks about publication and dissemination of information, it speaks of the creation of information, including literary works. To my eyes, that looks like a term of art derived from the Copyright Act, which basically means any kind of printed material can even include things like computer programs and databases. So if you engage in the creation of literary works in any medium, this exclusion applies. That's how broad it is. Thank you, Your Honor. Thank you. May it please the Court. My name is Teresa Boney, and together with Dennis Postiglione and Joseph Casas, we represent The Models. I would first like to address the questions of the Court, if I may, unless you have additional questions for me to follow up. So one of the questions the Court needs to address is this idea of personal and advertising injury being in a common definition. And if you look to our briefs, you'll see if you look at the historical context, ISO used to split them up. They used to have both personal injury and advertising injury. Those offenses still remain the same. They just combined it into a definition. Now, Princeton's answered this question for the Court because Princeton is the one who has excluded all of the offenses that may even pertain to advertising injury in their exclusion, in their exhibitions and related marketing exclusion. And if this Court can look to Princeton v. D.M. Ventures in Florida, the 2016 case, in that case it was agreed that offenses D through G were excluded, and the Court concluded that that rendered advertising injury illusory. There's no advertising injury. One of the questions this Court needs to ask is, let's say that an insurance company went in and they tried to combine bodily injury and property damage. We all know those are two completely different, I'm going to call them silos of coverage, bodily injury, property damage. But it's written as coverage A. There's one limit. Coverage B is the same way. It's personal injury and advertising injury. They just combined the definitions. That's all they do. Your point is we shouldn't infer substance from a drafting quirk. It's just a quirk of drafting, so we shouldn't infer any substance from that. Well, the only substance is just the historical content that indeed they did used to be separate, and now they're together. So at the end of the day, in substance, the words are the same. That's my point. And if we look at when a commercial company buys insurance, one of the things they're buying is advertising liability. They're buying that coverage. I'm not saying that we should adopt a reasonable expectation standard. We know that's not what's in Texas. But under the DEC page, they have a $1 million to a $2 million limit for coverage B. And what Princeton's asking this court to do is say that it's okay to wipe out advertising injury. It's okay. We're not going to tell them we're doing it. We're just going to do it by endorsement. Just the consequence of your view that the only way to get rid of privacy and these other protections is to delete them. You can't do it by exclusion. The right of privacy, you could do it by exclusion, but I don't know if it would hold up. That would be deleting... I don't understand what that means. Excuse me? It wouldn't hold up? Well, it may not. This court might not affirm that kind of holding because right of privacy deals with one offense, offense E, and with the deletion of just one offense, would that render it ambiguous or illusory? We don't know. But what we do know is that if you exclude every single offense that relates to a particular type of risk, that renders it illusory. So has held the Florida court and the Illinois court in another case that we cite in our brief. Back to your question, Justice Wilson, about the Davis-Ruiz case and the two endorsements. In that case, there was one endorsement that afforded coverage for professional liability and another endorsement that excluded testing and consulting. The important piece is the professional liability endorsement expressly stated that it provided coverage for testing and consulting. And then the endorsement completely excluded testing and consulting. And another important part of Davis-Ruiz is that in that case, there was a reasonable interpretation that the insured proposed to the court that allowed the coverage to be in play. What they decided was it's an ambiguity and it resolves in favor of the insured and in favor of coverage. And there they decided that the testing and consulting exclusion would only apply to those allegations that were not professional in nature. So there was a way to harmonize it, which is one of the things Princeton complains about in its brief, that the district court did not harmonize these provisions. And what Princeton said is, in fact, it could not have done so. And that is true. And they said it today again. With respect to illusory coverage, Princeton knows that A, B, and C did not involve advertising injury. They did it in the DM Ventures case. They're doing it again here. And they know that it completely gets rid of the advertising injury coverage. And that should not be allowed. With respect to the knowing . . . And you had the exclusions when you entered the policy, right? The exclusions that we're talking about here were both entered by endorsement. So I don't know that we know if the insured knew they had these exclusions or not. And certainly, you know, they're very wordy. And we don't know if the insured knew that the exclusions were there or not. That is not before the court today. Is there anything in the record that suggests that they were hidden or they did not get them? No, Your Honor. Okay. But the impact of it and the impact on the coverage, a general business person would not understand the impact of this. That it completely gets rid of all of their advertising injury, which it does. Getting into advertising idea, which was a question that you had, Justice Elrod, because that term is not defined, we have to look to the plain meaning as the district court did. And it is defined commonly as a concept or a theme that solicits business or promotes a product. And that's what we have in all of the models, images in all of the declarations and the evidence before the court. It's more than just an image. It's a brand. If you look at the models declarations . . . How is that not the product? It could be the product, Your Honor. In fact, alternatively, it is the product. But if it is the product, then it's not an advertising idea. The product itself is developed as a brand. The models image themselves are developed as a brand. This is established in the record in all of the models declarations. In the record at 1666 through 1932, 266 pages of information about how they have developed their brand, their social media influence. But I thought the use of like trademark or other branding intellectual property wasn't an advertising idea under our law. And certainly the product, the use of the product itself, is not use of an advertising idea. Well, it can be depending on the facts and circumstances. If you looked at this court's opinion in Kip, the whole argument was can the house be an advertisement? And the circuit held that yes, a house can be an advertisement. In that case, it involved architectural designs of homes that were sold to a home builder. The home builder, Hallmark, then used the homes themselves and the designs in trying to sell their homes. And this court held that yes, a house can be an advertisement because the houses themselves were used. But I'm looking at Laney. And Laney is a completely different scenario, Your Honor. Laney involved trademark. But isn't that a brand? Laney has completely different facts and circumstances, and here's why. Laney involved a trademark of a massage technique. Okay? And they licensed that massage technique, and then the other chiropractor, Utilite, used it. And they put terminology on it. What the court held, what this court held, is if there's no allegations of advertising idea being infringed,  There was no advertisement before the court. It was strictly a trademark case. It was trademark, and basically the product itself could not be the basis for advertising, for stealing an advertising idea or use of an advertising idea. But the court held in Laney that there was no advertising to be infringed on. It was just the trademark itself. Yeah. Do you have any thoughts on whether this other exclusion, the, oh, I'm forgetting the terminology, the intentional invasion of rights, is that waived or preserved, or what's the status of that? Your Honor, our position in our brief is that it has been waived in two different ways. First, it's been waived under 59E, because there was no motion put before the court to remedy that if it was in error. Secondly, in their brief, they point to an endorsement wording, as you pointed out, Justice Wilson, that includes vendors. Yeah. Well, that's what we're really talking about, right? We are. The more general language, I guess, is before us. I mean, it's in play. If you look at page 63 in the record, which is what they cite to for that change, it's an assault and battery endorsement. That does not apply here. So, but the, well, counsel opposite says that the more general language that doesn't specifically include vendors, I guess, still suffices. Or does it? Whether it does or it doesn't include vendors, the vendors are not insured here. And even if they were, can their intent be attributed to an insured? Even when one insured to another can't be attributed under the separation of insured clause, which is addressed in my brief. May I finish my answer? Well, can I ask a question? Yes. If we agree with you that the coverage on advertising injury is illusory, do we then reach this other exclusion or do we remand the case? Do we render it? I'm asking about remedy. Your Honor, I believe that if this court finds that the exhibitions and related marketing endorsement exclusion is illusory, then the field of entertainment endorsement is already been determined because Princeton has agreed that the use of an advertising idea is not excluded under that endorsement. What if it doesn't find that it's illusory? If this court does not find that the exhibitions and related marketing exclusion is illusory, the court would have options before it. It could remand this case back, finding that there's some sort of question of fact. But here, the evidence is so clear and it's so one-sided. It's all of the evidence is from the models and the expert of Mr. Chamberlain's reports and it details in a total of 789 pages why these models developed a brand, why it was an advertising idea, and why it involves the club's misuse of those ideas. Thank you. Do you have your argument? Thank you. May it please the court. I was struck in particular by one thing counsel said, that if we were faced with a situation where there was an exclusion that covered only one of the listed offenses for personal and advertising injury, that there would still be a potential argument that coverage was illusory because the grant of coverage for that one particular offense had been taken away. In other words, what they're saying is that they can just keep on slicing and dicing the coverage that's granted in order to find the illusory coverage and no matter what the exclusion says, it is part of the policy, that it can be disregarded if it takes away some of the coverage. That's the very nature of an exclusion. If we start slicing and dicing down the coverage and then say, well, then the coverage granted is illusory because an exclusion applies to it, we've completely eliminated the ability to have exclusions. So basically, if we don't stick to at least the grant of coverage, which is in the policy for evaluating whether or not coverage is illusory, that way lies madness, as the saying goes, because there's ultimately no end to the ability of insurers to claim illusory coverage. But what of counsel's argument that A and B both combine distinct areas of coverage? I mean, in other words, A, I guess, was property damage and personal injury. Those are distinct areas of injury, so we group those together as well. I mean, what do you make of their argument? Well, no, Your Honor, I don't know of any situation where all bodily injury or all property damage would ever be excluded under a policy. But certainly for personal and advertising injury. But if we treat A that way as distinct categories of harm, shouldn't we treat B that way also? In other words, their argument is not all that implausible if we just split up advertising and personal injury. But the problem is they can't be split. But they were split. Even under the old ISO form, the pre-1998 ISO form, which has changed and is no longer operative here, offenses D and E were under both personal injury and advertising injury. So the same offenses could be under either personal or advertising injury. I mean, these are not unlike bodily injury and property damage. They are not exclusive categories. There's a considerable amount of overlap. In fact, most advertising injury ultimately results in personal injury as well, under the common meaning of those terms, because it's injuries that are experienced by an individual and hence personal. And by the same token, some of the personal injuries are committed by advertising but also by advertising injury. So we're not dealing with two mutually exclusive grants of coverage here. We're dealing with only a single grant of coverage. And it's defined as the way it is in the policy, as injury arising from these seven distinct offenses. And any insured could not develop an expectation of advertising injury coverage if they read the policy. It would be different from what you would get from reading those definitions. The insured is not entitled to disregard the definition, nor, despite what counsel says, is the insured entitled to disregard exclusions to coverage which appear in the policy. I mean, that's equally as part of the insured's obligation to read and understand the policy that's being offered to them. So if an insurance policy is construed as a contract, and I see my time is up, if I may just wrap up, if that is the principle, as it always has been under Texas law... That's why I asked you if this is a principle of interpretation or an issue of substantive insurance law, and you said it was essentially both. It has aspects. So that is a departure from traditional contract interpretation. No, in that sense, it's certainly a rule of interpretation. Yes, Your Honor. Okay, thank you. We have your argument. This case is submitted. The court will stand at recess until tomorrow.